<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor<br><br>     *Plaintiff*,<br><br>  v.<br><br>AMA STAFFING SERVICES LLC; OPTION STAFFING SVC LLC; PEDRO CARBAJAL, individually, and JANETH FELICIANO, individually,<br><br>     *Defendants*. | Civil No.: 22-cv-1786 (KSH) (ESK)<br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

  This matter comes before the Court on the motion (D.E. 41) filed by plaintiff Martin J. Walsh, Secretary of Labor for the United States Department of Labor (the "Secretary"), seeking default judgment against corporate defendants AMA Staffing Services LLC ("AMA") and Option Staffing SVC LLC ("Option," with AMA, the "corporate defendants"), as well as their managing member, Pedro Carbajal ("Carabajal," with the corporate defendants, "defendants").[1] For the reasons that follow, the motion will be granted.

**II. Background**

  AMA and Option are New Jersey limited liability companies that provide staffing to companies in various industries, including manufacturing, distribution, and packaging. (D.E. 1, Compl. ¶¶ 2, 8-9.) Together they operate as a single, integrated business, with Carbajal acting as their sole managing member. (*Id.* ¶¶ 12-13, 50-74.)

---

[1] The Secretary also asserted claims against defendant Janeth Feliciano, who has since been dismissed from this action. (D.E. 36, 37.)

In January 2021, the Wage and Hour Division of the United States Department of Labor (the "WHD") initiated an investigation to determine defendants' compliance with the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et. seq.* (the "FLSA"). (D.E. 41-3, Naftaly Decl. ¶ 5.) The investigation revealed that from March 2019 through at least May 2021, defendants engaged in a scheme to underpay their employees by denying them overtime pay and federal minimum wage. (Compl. ¶¶ 2-3.) For example, defendants' employees routinely worked more than 40 hours per week but were not paid proper overtime. Instead, defendants paid them "straight time" or "bonuses" for overtime hours worked, which they failed to compute into the employees' regular hourly rate. (*Id.* ¶¶ 2, 78-105.) At times, defendants also failed to compensate their employees for all hours worked in a workweek. Some employees were only paid partial wages, whereas others were paid full wages with checks that bounced. (*Id.* ¶¶ 3, 106-08.)

On March 30, 2022, the Secretary initiated this wage and hour lawsuit and asserted claims for failure to pay overtime wages (Count 1) and minimum wage (Count 2), and for failure to maintain adequate payroll records (Count 3) in violation of the FLSA. (D.E. 1.) Although the Secretary served defendants with the complaint, they failed to respond. (D.E. 14, 15, 18.) Accordingly, the clerk entered default against them on September 22, 2022. (*See* D.E. 22, 23, 24.)

The Secretary has now moved for default judgment pursuant to Rule 55(b)(2), relying on a brief (D.E. 41-1, Mov. Br.), a declaration authored by WHD investigator Nava Naftaly (D.E. 41-3, Naftaly Decl.), and supporting exhibits. The Secretary seeks: (i) $288,175.42 in back wages, which reflects the unpaid overtime compensation of 1,029 employees; (ii) an equal amount of $288,175.42 in liquidated damages; and (iii) entry of a permanent injunction barring defendants from future violations of the FLSA. (*See* D.E. 41-11; *see also* Naftaly Decl. ¶ 37.)

**III.   Discussion**

    **A.   Legal Standard**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).  "Because the entry of a default judgment prevents the resolution of claims on the merits, 'this court does not favor entry of defaults and default judgments.'"  *Absen, Inc. v. LED Cap., LLC*, 2023 WL 238826, at *2 (D.N.J. Jan. 18, 2023) (McNulty, J.) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).  Thus, before entering default judgment, the Court must determine "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, and (2) whether the unchallenged facts present a sufficient cause of action." *Trustees of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Arata Expositions, Inc.*, 2023 WL 3821133, at *1 (D.N.J. June 5, 2023) (Williams, J.).  Once the Court is satisfied that these threshold requirements are satisfied, it must then "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

    **B.   Default Judgment Analysis**

        **a.   Threshold Requirements**

The Court is satisfied that the Secretary has met the threshold requirements for entry of default judgment.

The Court has subject matter jurisdiction over this federal wage and hour lawsuit pursuant to 28 U.S.C. §§ 1331 and 1345 and 29 U.S.C. § 217. (Compl. ¶ 5.) The Court also has personal jurisdiction over defendants because Carbajal is a New Jersey resident (*id.* ¶ 14) and the corporate defendants are New Jersey limited liability companies with office locations in the state (*id.* ¶¶ 8-10).

Moreover, defendants were properly served with process. Carbajal was served (both individually and as the registered agent for the corporate defendants) via certified and regular mail. (D.E. 18, Ma. Decl. ¶¶ 3, 12.) New Jersey law provides for service by mail in certain circumstances:

> (1) If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then, consistent with due process of law, *in personam* jurisdiction may be obtained over any defendant as follows:
>
> . . .
>
> (C) mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office[.]

N.J. Ct. R. 4:4-4(b)(1)(C); *see also* N.J. Ct. R. 4:4-3(a).

Included in the record is an affidavit of inquiry authored by WHD investigator Pamela Colombani, which indicates that defendants were served via certified and regular mail at Carbajal's personal residence in Sparta, New Jersey after four unsuccessful personal service attempts at that address—two attempts on April 13, 2022, one on April 18, 2022, and another on May 13, 2022. (D.E. 18-1, Colombani Aff. ¶ 9; *see* Ma Decl. ¶¶ 6-7, 9.) The affidavit of inquiry also indicates

4

that Colombani received Carbajal's Sparta, New Jersey address in response to questions she posed to him during the WHD investigation, and that Colombani confirmed that address with Carbajal's accountant on May 19, 2022. (Colombani Aff. ¶¶ 7, 10.) Moreover, the Secretary received confirmation that the certified mail package was "delivered to an individual" at the residence on May 24, 2022. (D.E. 18-2.) Accordingly, the mailed service here satisfies the requirements of N.J. Ct. R. 4:4-4(b)(1)(C).[2]

### b. Legitimate Cause of Action

In his default judgment papers, the Secretary asks the Court to make the following findings: (i) Carbajal is an "employer" for purposes of the FLSA; (ii) the corporate defendants operate as a single, integrated employer, which is a covered "enterprise" under the FLSA; (iii) defendants collectively violated the FLSA's overtime and recordkeeping provisions; and (iv) those violations were willful. (Mov. Br. at 4-11.) As a result of defendants' default, the Court will accept as true the factual allegations in the complaint except those that relate to damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### i. Carbajal is an "Employer" Under the FLSA.

An "employer" is defined in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The complaint alleges that Carbajal is the sole, managing member of the corporate defendants. (Compl. ¶¶ 12-13.) In

---

[2] As explained *supra*, New Jersey law provides for mailed service on limited liability companies after diligent attempts at personal service where, *inter alia*, the mailing is "addressed to a registered agent for service." N.J. Ct. R. 4:4-4(b)(1)(C); *see* N.J. Ct. R. 4:4-4(a)(5) (providing for *in personam* jurisdiction over limited liability company by personally serving summons and complaint on officer or managing agent). Because mailed service of the summonses and complaint on Carbajal—the corporate defendants' registered agent and sole managing member—constitutes valid service on all defendants, the Court need not analyze the propriety of the Secretary's subsequent attempts to personally serve the corporate defendants. (*See* D.E. 14, 15 (certificates of personal service dated August 1, 2022).)

that role, Carbajal shares in 100% of their profits and losses and has the authority to, *inter alia*, hire and fire their employees, set and distribute wages, determine the method of pay, and process payroll. (*Id.* ¶¶ 15-28.) Carbajal also has the authority to enter into staffing agreements with clients, which is the crux of the corporate defendants' business. (*Id.* ¶¶ 29-30.) In short, Carbajal actively controls the corporate defendants and manages their employees. He is therefore an "employer" within the meaning of Section 203(d) of the FLSA.

### ii. The Corporate Defendants Operate as a Single Employer and Together are a Covered "Enterprise" Under the FLSA.

Under a single-employer theory of liability, "nominally separate companies may be so interrelated that they constitute a single employer." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 565 (E.D. Pa. 2011) (internal citations and quotations omitted). If such a relationship exists, "the entities 'are jointly and severally liable for remedying unfair labor practices committed by either of them,'" meaning that a wronged employee "can sue both his nominal employer and its integrated affiliates in the enterprise." *Huang v. Sakura Mandarin, Inc.*, 2022 WL 2052646, at *2 (E.D. Pa. June 7, 2022) (quoting *Grane Health Care v. NLRB*, 712 F.3d 145, 150 (3d Cir. 2013)). Although the Third Circuit has not yet endorsed a "single employer" theory in the FLSA context, district courts in the Circuit have held that "employees may hold all the members of a single enterprise accountable for the FLSA violations of a single member" so long as "the particular facts of the case . . . merit it." *Id.* at *2; *Xiao v. Sichuan Gourmet LLC*, 2022 WL 819096, at *9 (W.D. Pa. Mar. 18, 2022) (recognizing viability of properly pled "single employer" theory in FLSA context); *Williams v. Bob Evans Restaurants, LLC*, 2020 WL 4692504, at *4 (W.D. Pa. Aug. 13, 2020) (same). Those courts have borrowed the following factors from the context of the National Labor Relations Act in determining whether separate companies constitute a "single employer": (i) whether the companies share common ownership or financial control; (ii) the

6

interrelatedness of the companies' operations; (iii) whether the companies share common management; and (iv) whether the companies centralized control of labor relations. *See Huang*, 2022 WL 2052646, at *4.

Here, the complaint alleges that the corporate defendants are controlled and managed by Carbajal, their sole managing member, who shares in 100% of their profits and losses. (Compl. ¶¶ 12-13, 15.) The complaint further alleges that the corporate defendants share a common workforce consisting of office employees (who fulfill client orders by assigning warehouse employees to work at client warehouses) and the warehouse employees themselves. Office employees fulfill client orders irrespective of whether the client has contracted with Option or AMA, and warehouse employees work at various client warehouses regardless of the client contract. (*Id.* ¶¶ 50-57.) Moreover, all employees are paid through Option's bank account irrespective of whether they work under an Option contract, and employee payroll records are consolidated in a single database. (*Id.* ¶¶ 58-60.) These allegations demonstrate that the corporate defendants' operations, management, and financial control are so interrelated that they should be treated as a single employer under the FLSA.

Moreover, the Court is satisfied that the corporate defendants are a covered "enterprise" that can be held jointly and severally liable with Carbajal for FLSA violations. The FLSA covers any "[e]nterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1). The term "enterprise" is defined in the FLSA as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose[.]" 29 U.S.C. § 203(r)(1). As such, the three main elements of an "enterprise" are: (1) related activities; (2) unified operations or common control; and (3) a common business purpose. *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 229 (3d Cir. 1991). Moreover, an

7

enterprise is "engaged in commerce or in the production of goods for commerce" if the enterprise: (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has an "annual gross volume of sales made or business done" in an amount not less than $500,000. 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

As explained *supra*, the complaint alleges that the corporate defendants were engaged in related activities (the provision of staffing services) under common ownership (Carbajal, their sole managing member) with a shared workforce, which satisfies the "enterprise" requirement. (Compl. ¶¶ 12-13, 15-31, 51-60.) Moreover, the complaint alleges that (i) the corporate defendants' employees handled, sold, or otherwise worked with "goods or materials that have been moved in or produced for commerce," including but not limited to "surgical instruments, produce, and cosmetics"; and (ii) the corporate defendants had a combined annual "gross volume of sales made or business done" in excess of $500,000. (*Id.* ¶¶ 69-73.) As such, the Secretary has adequately alleged that the corporate defendants are a "covered enterprise" under the FLSA.

### iii. Defendants Violated the Overtime and Recordkeeping Provisions of the FLSA.

Having determined that defendants can be held liable under the FLSA, the Court must assess whether the complaint alleges viable causes of action.

Under the FLSA, employees must be paid one and a half times their "regular rate" of pay for each hour worked in excess of 40 hours a week. 29 U.S.C. § 207(a)(1). To state an FLSA overtime claim, a plaintiff must allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014). Here, the complaint alleges various overtime violations which are supported

by the payroll records included in the default judgment record. Those violations include the following:

- Instances where warehouse employees worked more than one job in a single workweek and worked 40 or fewer hours on each job but more than 40 total hours in that workweek. Defendants typically did not pay any overtime premiums for hours worked over 40. (Compl. ¶¶ 86-91; D.E. 41-5, Naftaly Decl. Ex. 2 at 3-6; D.E. 41-6, Naftaly Decl. Ex. 3 at 3; D.E. 41-8, Naftaly Decl. Ex. 5 at 2; D.E. 41-10, Naftaly Decl. Ex. 7.)

- Instances where warehouse employees worked more than one job in a single workweek and worked over 40 hours on one job and additional hours on another. Defendants typically paid overtime premiums for some but not all hours worked over 40. (Compl. ¶¶ 92-95; Naftaly Decl. Ex. 2 at 1, 6; Naftaly Decl. Ex. 3 at 1, 2, 4; D.E. 41-7, Naftaly Decl. Ex. 4.)

- Instances where warehouse employees worked over 40 hours on one job in a single workweek but were not paid any overtime premiums for hours worked over 40. (Compl. ¶¶ 96-98; Naftaly Decl. Ex. 5 at 1.)

- Instances where employees (typically office) worked upward of 60 hours per week and were paid bi-weekly salaries or lump sums, which neither reflected actual hours worked nor included overtime pay for hours worked over 40. (Compl. ¶¶ 103-05; Naftaly Decl. Ex. 2 at 2; D.E. 41-9, Naftaly Decl. Ex. 6.)

Moreover, the complaint alleges that defendants failed to keep records that accurately documented their employees' daily and weekly hours of work, regular or overtime rates of pay, and the total amount of wages paid, among other things. (Compl. ¶¶ 109-115; Naftaly Decl. ¶ 16.) These allegations are sufficient to establish violations of the FLSA's recordkeeping provisions. *See* 29 U.S.C. § 211(c) (employers are required to "make, keep, and preserve" accurate records of

employees' "wages, hours, and other conditions and practices of employment"); *see also* 29 U.S.C. § 215(a)(5) (making it unlawful for an employer to violate the recordkeeping provisions of Section 211(c)).

### iv. Defendants' FLSA Violations were Willful.

Finally, the Secretary asks the Court to find that defendants' FLSA violations were willful. Willfulness "requires a showing of intent or reckless disregard" of the FLSA. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 188 (3d Cir. 1988); *Martin v. Selker Bros.*, 949 F.2d 1286, 1296 (3d Cir. 1991).[3] Here, the complaint alleges that for more than two years, defendants engaged in a pattern of denying employees minimum wage and overtime pay. (Compl. ¶ 2.) The complaint includes allegations which suggest that defendants were aware of the FLSA's overtime requirements but intentionally disregarded them, strategically paying overtime in certain circumstances but not in others. (*Id.* ¶¶ 86-95, 117-18.) Moreover, the complaint alleges that at least some employees complained to defendants about their wages, which further supports a finding that defendants knew or recklessly disregarded their obligations under the FLSA. (*Id.* ¶ 120.) Accordingly, the Court finds that defendants' FLSA violations were willful.

### c. Default Judgment Factors

Turning to the factors set forth in *Emcasco*, the Court is satisfied that entry of default judgment is appropriate here. First, "it is axiomatic that the Court cannot consider Defendants' defenses because Defendants have failed to respond to this action." *Qu Wang v. Fu Leen Meng*

---

[3] A finding of willfulness is relevant for statute of limitations purposes. *See* 29 U.S.C. § 255(a) (FLSA cause of action "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"); *see also Brock*, 846 F.2d at 188 (recognizing that "[a]n employer is liable for three years of back wages if his violation of the FLSA was willful, but only two if it was not").

*Rest. Ltd. Liab. Co.*, 2018 WL 1027446, at *3 (D.N.J. Feb. 23, 2018) (Hillman, J.); *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016) (Arleo, J.) (entering default judgment in FLSA action and reasoning that "in the absence of any responsive pleading and based upon the facts alleged in the [c]omplaint, [d]efendants do not have a meritorious defense." Second, the Secretary will suffer prejudice if default judgment is not entered, as defendants' failure to respond leaves the Secretary "with no other means to vindicate his claims." *Qu Wang*, 2018 WL 1027446, at *3; *see Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (Simandle, J.) (defendant's failure to answer prevented plaintiff from "prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion"). Finally, because there is nothing before the Court demonstrating that defendants' failure to respond was due to something other than willful negligence, the Court may infer defendants' culpability from their default. *See Zuniga v. AM Framing LLC*, 2022 WL 203234, at *4 (D.N.J. Jan. 24, 2022) (McNulty, J.).

### C. Remedies

Having determined that entry of default judgment is appropriate, the Court next assesses the remedies sought by the Secretary.

#### a. Back Pay and Liquidated Damages

The Secretary first seeks $288,175.42 in back wages and an equal amount of $288,175.42 in liquidated damages, plus post-judgment interest. *See* 29 U.S.C. § 216(c) (recognizing that the Secretary may bring an action to recover "unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages").

The Secretary seeks back wages on behalf of 1,029 employees, all of whom are listed in a table attached to the Secretary's moving brief as Exhibit A. (*See* D.E. 41-2, Ex. A.) The Naftaly

declaration provides a detailed explanation of how the Secretary arrived at his total back wage figure, and attaches a spreadsheet containing the back wage computations for each employee listed in Exhibit A. (*See* Naftaly Decl. ¶¶ 29-37, Ex. 1.) The declaration also cross-references weekly payroll records, which provide examples of how the Secretary computed back wages for certain employees during a given workweek. (*See id.* Exs. 2-7.) The Court is satisfied that the Naftaly declaration and its supporting exhibits provide a "basis for the damages specified in the default judgment." *Nieves v. Top Notch Granite & Marble LLC*, 2011 WL 2937352, at *2 (D.N.J. July 19, 2011) (Rodriguez, J.) (quoting *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (Greenaway, J.)). Accordingly, the Court will award back wages in the amount sought.

Moreover, the Secretary is entitled to liquidated damages in an amount equal to compensatory damages unless the employer can show that its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *see Marshall v. Brunner*, 668 F.2d 748, 752-53 (3d Cir. 1982). It is well settled that "where, as here, a defendant has failed to appear, and has not presented any evidence regarding good faith, a court should award liquidated damages to the plaintiff." *Qingwei Ma v. Chef Jon's Authentic Chinese Cuisine*, 2020 WL 6111037, at *4 (D.N.J. Oct. 16, 2020) (Salas, J.) (quoting *Qu Wang*, 2018 WL 1027446, at *5 (collecting cases)). Accordingly, the Court will grant the Secretary's request for liquidated damages in the amount of $288,175.42, making the total damages award $576,350.84.

### b. Injunctive Relief

Finally, the Secretary seeks a permanent injunction enjoining defendants from future violations of the FLSA, as permitted by the statute. *See* 29 U.S.C. § 217 (district courts "shall

12

have jurisdiction, for cause shown, to restrain violations of" the FLSA).  The decision to grant injunctive relief "lies within the sound discretion of the district court." *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989) (Debevoise, J.), *aff'd*, 914 F.2d 242 (3d Cir. 1990).  In making that decision, courts consider: (1) irreparable injury; (2) inadequacy of legal remedies; (3) the balance of hardships; and (4) the public interest.  *See 2109971 Ontario Inc. v. Matrix Hosp. Furniture Inc.*, 2022 WL 154411, at *4 (D.N.J. Jan. 14, 2022) (McNulty, J.).  "In the context of the FLSA, courts also consider whether, in the absence of an injunction, violations are likely to recur." *Walsh v. Serenitycare LLC*, 2022 WL 17974467, at *3 (W.D. Pa. Dec. 28, 2022).

These factors favor the issuance of a permanent injunction.  In the FLSA context, "[p]rospective injunctions are essential because the cost of noncompliance is placed on the employer, which lessens the responsibility of the [WHD] in investigating instances of noncompliance." *Id.* (quoting *Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992)).  Moreover, there are no alternative legal remedies available because of defendants' failure to appear, and both the balance of hardships and the public interest weigh in favor of enforcing the wage and hour laws.  Finally, as explained *supra*, the Secretary's allegations (which find documentary support in defendants' payroll records) leave little room for doubt that defendants were aware of their obligations under the FLSA but blatantly disregarded them.  Accordingly, the Court in its discretion finds that injunctive relief is necessary to ensure future compliance with the FLSA.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant the Secretary's motion (D.E. 41).  An appropriate order and judgment will follow.

/s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J.

Date: July 21, 2023